IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARL H. FISCHER,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| v. | : | NO. 10-7349 |
| **TERRENCE J. MULLEN and KATHRYN MULLEN, husband and wife,** | : | |
| Defendants. | : | |

**DuBOIS, J.**                                                           **July 13, 2011**

**M E M O R A N D U M**

**I.    INTRODUCTION**

This case arises from a dispute regarding the sale of a property in Villanova, Pennsylvania. Plaintiff Carl H. Fischer asserts that defendants Terrence J. and Kathryn Mullen, from whom he purchased the property, deceived and misled him regarding material defects in the property, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1 et seq., and the Pennsylvania Real Estate Seller Disclosure Law ("RESDL"), 68 Pa. Cons. Stat. § 7301 et seq. Fischer seeks damages pursuant to the UTPCPL and the RESDL, and for fraudulent inducement and breach of contract.

Presently before the Court is defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that an affirmative defense – a release both parties signed prior to closing on the property – prevents Fischer from obtaining relief. For the reasons that follow,

-1-

the Court denies defendants' Motion to Dismiss without prejudice to defendants' right to raise this issue again after the completion of discovery by motion for summary judgment or at trial.

## II.   BACKGROUND

On August 20, 2009, plaintiff Carl H. Fischer entered into a Sale Agreement with defendants Terrence J. and Kathryn Mullen to purchase the house located at 848 Parkes Run Lane, Villanova, Pennsylvania. (First Am. Compl. ¶¶ 5-6.) The Sale Agreement was amended through an Addendum to Agreement of Sale ("the Addendum") on September 4, 2009. (Id.)

Before closing, Fischer learned that a woman had committed suicide on the property in 1992. (Id. ¶ 53.) After some correspondence between the parties, Fischer and the Mullens signed an Amendment to Agreement of Sale ("the Amendment") on November 6, 2009. The Amendment included the following paragraph:

> Seller and Buyer agree that any and all disputes between them respecting the sale of the Property have been resolved and subsumed in this Amendment, including, without limitation, any alleged non-disclosures and/or the resolution of any inspection items. Seller and Buyer agree, on behalf of themselves and their respective representatives, agents, heirs and assigns, to hereby forever fully, finally and completely waive, remise, release and discharge, and hereby agree to indemnify and hold harmless the other party, and its representatives, agents, heirs and assigns, from and against any and all liability, claims, causes of action, losses, damages, costs or expenses (including reasonable attorneys' fees) arising out of or in any way related to such disputes.

(Id., Ex. C ¶ 3.)

Along with the original Sale Agreement, the Mullens provided Fischer with a Property Disclosure Statement ("the Statement") dated May 8, 2009. (Id. ¶ 8.)  In the Statement, the Mullens answered detailed questions regarding the condition and status of various parts of the property, including the roof, the basement, the crawl spaces, the sump pump, and the drainage system. (Id., Ex. D.) The Mullens also answered "no" when asked if the home had any "material

defects." (Id. ¶¶ 37-38.)

Fischer's inspection of the property prior to closing did not reveal any problems with the home or the property. (Id. ¶ 43). Upon moving into the home, however, Fischer alleges he discovered numerous issues with its roof, flashing, and drainage system, as well as a concealed sump pump and moisture problems in the basement and the walls. (Id. ¶ 42.)

Fischer alleges that the Mullens knew about these problems and concealed them. (Id. ¶¶ 11, 13-15, 52.) He also avers that the Mullens' answers on the Statement were "false, deceptive and misleading," as the extent and severity of the problems were such that the Mullens "must have known" of their existence. (Id. ¶¶ 13-15, 20-21, 33, 35.) Further, he alleges that the Mullens' decision to paint certain areas of the basement before showing the house was an attempt to hide the water leakage problems and another example of their alleged deceptive behavior. (Id. ¶¶ 13-15, 23-25.)[1]

Fischer seeks nominal, compensatory, punitive, and/or consequential damages, as well as equitable relief, pursuant to the Pennsylvania UTPCPL and the Pennsylvania RESDL. Fischer also seeks damages for fraudulent inducement and breach of contract. (Id. ¶¶ 64-100.) The Sale Agreement is governed by Pennsylvania law. (Id. ¶ 61 citing Sale Agreement ¶ 26.).

### III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised

---

[1] In his Brief in Response to the Motion to Dismiss, Fischer claims the Amendment itself was procured by fraud. In their Reply Brief, the Mullens point out Fischer never alleges this specific claim in the First Amended Complaint. The Mullens are correct. Thus, in deciding the instant motion, the Court does not consider this argument. E.g., Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007).

by motion. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff . . . ." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court utilized a "two-pronged approach," which it later formalized in Iqbal. Iqbal, 129 S. Ct. at 1950; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court then assesses "the 'nub' of the plaintiff[']s] complaint – the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. Id.

Finally, a court may grant a motion to dismiss if an affirmative defense is evident from

-4-

the face of the complaint. <u>Victaulic Co.</u>, 499 F.3d at 234 (citing <u>In re Tower Air, Inc.</u>, 416 F.3d 229, 238 (3d Cir. 2005)).

## IV. ANALYSIS

Defendants allege that an affirmative defense – the release included in the Amendment – appears on the face of the First Amended Complaint and prevents plaintiff from obtaining relief. The Court disagrees. The Court concludes the language in the release is ambiguous. As a result, the affirmative defense is not evident on the face of the First Amended Complaint, and defendants' Motion to Dismiss is denied.

Defendants argue that the release absolves them from liability. Plaintiff responds that the wavier is limited only to claims arising from the suicide, and not "future, suspected, unsuspected or unknown claims." (First Am. Compl. ¶ 55.)

In construing a contract term, "[w]here language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended." <u>Steuart v. McChesney</u>, 444 A.2d 659, 663 (Pa. 1982). This focus on the four corners of the document and its plain meaning holds so long as the language is unambiguous. However, if a release is "reasonably susceptible of different constructions and capable of being understood in more than one sense," it is considered ambiguous. <u>Kripp v. Kripp</u>, 849 A.2d 1159, 1163 (Pa. 2004).

The language in the release in this case is susceptible of different interpretations. It is for that reason the Court concludes the release is ambiguous. Specifically, the release could arguably apply only to disputes that occurred before the parties signed the Amendment, and not to future claims. Use of the language "such disputes" and "have been resolved" support that construction.

Conversely, the release could also be construed to apply to both past and future claims. The Amendment contains expansive language – "without limitation" and "hereby forever fully, finally, and completely waive . . . all liability" – that supports the Mullens' broad reading of the release.

As the alleged affirmative defense of release is the only basis for the defendants' motion, and the Court concludes the release is ambiguous, defendants have not demonstrated as a matter of law that the First Amended Complaint fails to state a claim for relief.[2] Accordingly, defendants' Motion to Dismiss is denied without prejudice.

## V. CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss is denied without prejudice to defendants' right to raise this issue again after the completion of discovery by motion for summary judgment or at trial.

An appropriate order follows.

---

[2] The Court also notes that Pennsylvania rules of interpretation dictate, at times, a strict and limited reading of releases. "Releases are strictly construed 'so as to avoid the ever present possibility that the releasor may be overreaching.'" Bowersox Truck Sales and Serv., Inc. v. Harco Nat'l Ins. Co., 209 F.3d 273, 280 (3d Cir. 2000) (citing Restifo v. McDonald, 230 A.2d 199, 201 (Pa. 1967)). Moreover, "general words of release will not usually be construed to bar a claim which had not accrued at . . . the execution of the release." Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 896 (3d Cir. 1975) (internal citations omitted). Plaintiff's claims in this case appear to have accrued after the parties executed the release.